UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| B. ROKA and S. KHATRI, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:25 CV 1697 RWS |
| | ) | |
| KRISTI NOEM, et al.[1] | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before me on the United States Attorney's Motion to Dismiss for Lack of Subject Matter Jurisdiction [13].  Plaintiffs B. Roka and S. Khatri filed their original Complaint in this Court on November 18, 2025.  Plaintiffs' Complaint alleges USCIS has unreasonably delayed adjudicating their I-485 applications for adjustment of status to lawful permanent resident.  Plaintiffs seek relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361.  For the reasons set forth below, I am requesting supplemental briefing from both parties on the jurisdictional issue.

---

[1] Kristi L. Noem should be substituted for Markwayne Mullin, who was sworn in as Secretary of the Department of Homeland Security on March 24, 2026.

1

## Background

The allegations in Plaintiffs' Complaint are taken as true for the purposes of this motion. Plaintiffs B. Roka and S. Khatri are nationals of Nepal. ECF. No. 1 at ¶ 1. Roka was sponsored by his employer for permanent resident status under the EB-3 visa category for unskilled workers. *Id.* On January 7, 2022, Roka's employer filed a Form I-140 with USCIS. Roka concurrently filed a Form I-485 adjustment of status application for legal permanent residency. *Id.* Roka's Form I-140 was approved on January 13, 2022. *Id.* at ¶ 17. Based on Roka's approved I-140 Form, his spouse, Khatri, properly filed a Form I-485 application as a derivative applicant. *Id.* at ¶ 18. On November 12, 2024, Plaintiffs completed their required interview at the USCIS Field Office in St. Louis, Missouri. *Id.* at ¶ 23. Their I-485 applications have a priority date of March 11, 2021. *Id.* at ¶ 16. The priority date on their applications is current. *Id.*

At the time of filing their Complaint in this Court, Plaintiffs' I-485 applications had been pending for over 46 months. *Id.* at ¶ 28. As of November 2025, Plaintiffs alleged they had not received any further requests for information or evidence from USCIS despite their numerous inquiries regarding the status of their applications. *Id.* at ¶ 25. Plaintiffs allege that they have endured significant financial and emotional hardships as they await final adjudication of their

applications, including being unable to travel outside the United States to visit immediate family members abroad.  *Id.* at ¶¶ 30, 31.

On January 21, 2026, the United States Attorney filed an unopposed motion for an extension of time to respond to Plaintiffs' Complaint.  The United States Attorney stated that their office remained in continuous communication with the agencies responsible for adjudicating Plaintiffs' applications and anticipated that an imminent decision may render the matter moot.  ECF. No. 8 at 3-4.  I granted the motion.  On March 9, 2026, the United States Attorney filed the instant Motion to Dismiss for Lack of Subject Matter Jurisdiction.  In its motion, the United States Attorney noted that on February 12, 2026, USCIS issued a Request for Evidence (RFE) to Plaintiffs seeking additional employment-related information before making a final decision on their applications.  ECF. No. 14 at 2, 14-1.  The deadline for Plaintiffs to respond to the RFE is May 13, 2026.  *Id.*  As of the date of this Order, Plaintiffs' I-485 applications remain pending.  Plaintiffs' Complaint requests that I enter an Order mandating a time certain for USCIS to adjudicate their applications, or, in the alternative, that I compel USCIS to adjudicate their applications immediately.

## Legal Standard

Subject matter jurisdiction is a "threshold requirement which must be assured in every federal case." *Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d

3

1171, 1174 (8th Cir. 1990). "In deciding a motion under Rule 12(b)(1), the district court must distinguish between a facial attack—where it looks only to the face of the pleadings—and a factual attack—where it may consider matters outside the pleadings." *Croyle by & through Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018). "In a factual attack, the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* (internal quotation omitted). "In a facial attack, a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction." *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018). The United States Attorney specified that its motion is a facial attack on Plaintiffs' Complaint. ECF. No. 14 at 4.

### Discussion

The United States Attorney argues that this Court lacks subject matter jurisdiction to review the discretionary relief-process in immigration cases, including the pace at which to grant or deny the I-485 applications at issue. Although the Plaintiffs' response is brief, I am not constrained by the parties arguments regarding jurisdiction. I have an independent duty to assess whether there is subject matter jurisdiction. *See, e.g.*, *City of Kansas City, Mo. v. Yarco Co.*, 625 F.3d 1038, 1040 (8th Cir. 2010); *Bhaidas v. Noem*, No. 3:25CV242 DRL-SJF, 2025 WL 2996362, at *3 (N.D. Ind. Oct. 22, 2025) ("The court isn't limited to the parties' jurisdictional arguments, for it has an independent duty to ensure its

4

subject matter jurisdiction.") (citing Fed. R. Civ. P. 12(h)(3)).

## I.      There is complete overlap between Plaintiffs' APA and mandamus claims.

As an initial matter, unreasonable delay claims brought under the APA and Mandamus Act are governed by "essentially the same" standards.  *Hassan v. Bitter*, 748 F. Supp. 3d 722, 736 (D. Neb. 2024) (noting that "[t]here is complete overlap between [Plaintiff's] APA 'unreasonable delay' claim and his claim under the Mandamus Act").  "Most circuits have adopted the mandamus approach to agency delay issues [under the APA]; we assumed it was jurisdictionally appropriate in *Irshad v. Johnson*, 754 F.3d 604, 607-08 (8th Cir. 2014)."  *Org. for Competitive Markets v. U.S. Dep't of Agric.*, 912 F.3d 455, 461–62 (8th Cir. 2018).  Under the APA, agencies are required "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, ... [to] proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  The APA further provides that a reviewing court "shall…compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

To state a claim under for unreasonable delay under § 706(1), a plaintiff must assert "that an agency failed to take a ***discrete*** agency action that it is ***required to take***," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 44 (2004) (emphasis in original), and that the delay was unreasonable.  When "the manner of

5

[an agency's] action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be." *Id.* at 65. The APA "carried forward the traditional practice prior to its passage, when judicial review was achieved through use of so-called prerogative writs—principally writs of mandamus." *Id.* at 63. The Eighth Circuit observed that mandamus has traditionally been an "extraordinary remedy." *Org. for Competitive Markets*, 912 F.3d at 462. For mandamus to issue, an agency must have a "clear, nondiscretionary duty to honor [the claimant's] right." *Mitchael v. Colvin*, 809 F.3d 1050, 1054 (8th Cir. 2016). "[T]he duty owed to the plaintiff must be ministerial and a positive command so plainly prescribed to be free form doubt." *Id.* (citing *Keeny v. Sec'y of the Army*, 437 F.2d 1151, 1152 (8th Cir.1971)).

## II.   The Eighth Circuit's decisions in *Thigulla* and *Fofana* may be distinguishable from Plaintiffs' case.

Plaintiffs assert that USCIS has failed to take a discrete action it is required to take because the agency is required to adjudicate their I-485 applications "within a reasonable time." The United States Attorney argues that judicial review is foreclosed by Eighth Circuit precedent and 8 U.S.C. 1252(a)(2)(B)(ii), the statute governing judicial review of discretionary relief in immigration cases. The United States Attorney asserts that I should "continue the trend of summarily dismissing 'unreasonable delay' actions that inherently fun afoul of [8 U.S.C. 1252(a)(2)(B)(ii)]." ECF. No. 14 at 7. I do not follow trends, especially those

6

requiring that I summarily dismiss a case, without thorough consideration of the statutes, regulations, and caselaw involved. Federal courts have an "unflagging obligation…to exercise the jurisdiction given to them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Any decision regarding the extent of the jurisdictional bar in this case implicates fundamental questions about the separation of powers and proper role of judicial review of agency action or alleged inaction. The Supreme Court has yet to address whether § 1252(a)(2)(B)(ii) strips courts of jurisdiction to hear "unreasonable delay" lawsuits of the type brought by Plaintiffs.

Here, I must determine whether the pace at which USCIS adjudicates I-485 adjustment of status applications is discretionary and therefore not reviewable under § 1252(a)(2)(B)(ii). The United States Attorney argues that the jurisdictional bar is so broad as to encompass "***any*** 'of the discretionary-relief process in immigration cases.'" ECF. No. 14 at 4 (quoting *Fofana v. Noem*, 163 F.4th 1135, 1137 (8th Cir. 2026)). Section 1252(a)(2)(B) provides:

(B) Denials of discretionary relief

no court shall have jurisdiction to review—

      (i)     any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or

      (ii)    any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the

7

> Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

"Two elements trigger § 1252(a)(2)(B)(ii)'s jurisdictional bar: (1) a decision or action by the Attorney General or the Secretary of Homeland Security and (2) statutorily specified discretion under Subchapter II of Chapter 12 of Title 8 (8 U.S.C. §§ 1151–1381) (Subchapter II)." *Thigulla v. Jaddou*, 94 F.4th 770, 774 (8th Cir. 2024) (citing *Kucana v. Holder*, 558 U.S. 233, 253 (2010) (Alito, J., concurring) ("The phrase 'under this subchapter' refers to Subchapter II of Chapter 12 of Title 8, 8 U.S.C. §§ 1151–1381 ....")).  Plaintiffs argue that the statute does not apply to them because they are not in removal proceedings, but the statute applies "regardless of whether the judgment, decision, or action is made in removal proceedings."  8 U.S.C § 1252(a)(2)(B).  The United States Attorney asserts that two Eighth Circuit cases, *Thigulla v. Jaddou* and *Fofana v. Noem*, are "directly controlling precedent" on the issue.  ECF. No. 16 at 2.  However, I find these cases may be distinguishable from Plainitffs'.  Neither case directly addresses whether USCIS has a nondiscretionary duty to render a decision on an I-485 application within a reasonable time.

In *Thigulla*, the Thigullas challenged the Attorney General's[2] authority to

---

[2] "Section 1255(a) provides that 'the Attorney General' is the government official with the authority to adjust status, 'but Congress has transferred the adjudication functions of the former Immigration and Naturalization Service (INS) to the Secretary of Homeland Security and his delegate' at the U.S. Citizenship and Immigration Services." *Thigulla*, 94 F.4th at 775 n.4 (quoting *Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260, 1264 n.2 (11th Cir. 2011)).

promulgate an Adjudication Hold Policy pursuant to 8 U.S.C. § 1255(a).  94 F.4th at 774.  Because "there are limits on the number of visas that can be issued in each category and from each country," applicants must have both a current priority date and an approved status adjustment application.  *Id.* at 772 (quoting *Mantena v. Johnson*, 809 F.3d 721, 725 (2d Cir. 2015)).  The priority date "determines when an applicant has access to available visas."  *Id.*  The Thigullas had a priority date of January 17, 2014.  Their priority date was current because "the Department of State, in its monthly visa bulletin, listed the Thigullas' desired class of visa…as current or immediately available for applicants with a priority date before December 1, 2014."  *Id.*  The Department of State then moved back or "retrogressed" the priority date, so the Thigullas' date was no longer current.  *Id.* at 772-73.  As a result, USCIS did not adjudicate the Thigullas' status adjustment applications.  "The Government *does not approve (or deny) pending status adjustment applications until an immigrant visa number has been allocated.*"  *Id.* at 772 (emphasis added). To get an immigrant visa number, an applicant's priority date must be current.  *Id.*  The Thigullas' applications were therefore being held in abeyance by USCIS under the policy.  They argued that this "Adjudication Hold Policy" went "against congressional intent of how to administer the green card process."  *Id.* at 774.

The Eighth Circuit defined the issue in the case as "whether the Attorney

General acted within his discretionary, statutory authority by implementing and executing the Adjudication Hold Policy." *Id.* at 776.  Applying § 1252(a)(2)(B)(ii), the court held that the Attorney General had the authority to implement the Adjudication Hold Policy because that authority was "specified under Subchapter II to be in the discretion of the Attorney General." *Id.* at 775. The court noted that in interpreting § 1252(a)(2)(B)(ii)'s jurisdictional bar, the Supreme Court had held that "by Subchapter II, 'Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute.'" *Id.* (quoting *Kucana*, 558 U.S. at 247). The court then turned to the text of § 1255(a), which falls under Subchapter II. Under § 1255(a), "[t]he status of an alien who was inspected and admitted or paroled into the United States…*may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe*, to that of an alien lawfully admitted for permanent residence." *Id.* at 775 (emphasis in original)

Upon analyzing the statutory text, the court determined that "[b]y stating the Attorney General, in his 'discretion,' 'may' adjust status and 'may' prescribe regulations, Congress, in Section 1255(a), set out the [Attorney General's] discretionary authority." *Id.* at 775 (citing *Kucana*, 558 U.S. at 247, quoting *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001) (" 'may' suggests discretion"). The court therefore held that "[b]ased on the text, congressional intent is clear: the

10

decision to delay adjudicating the Thigullas' status adjustment application, *based on the creation of the Adjudication Hold Policy*, was within the Attorney General's discretionary authority." *Id.* (emphasis added). Unlike the plaintiffs in *Thigulla*, the Plaintiffs' status adjustment applications *in this case have a current priority date*. Plaintiffs are not challenging the Attorney General's discretionary authority to promulgate an Adjudication Hold Policy. Rather, they are challenging USCIS's alleged *failure to make a decision at all* concerning their applications within a reasonable period of time. *See, e.g.*, *Varniab v. Edlow*, No. 25-CV-10602-SVK, 2026 WL 485490, at *7-8 (N.D. Cal. Feb. 20, 2026) (distinguishing the "retrogression hold policy" in *Thigulla* as "stand[ing] on different factual and legal footing" than other pace-of-adjudication cases); *A.M.S. v. Edlow*, No. CV 25-476 (RDM), 2026 WL 850779, at *11 (D.D.C. Mar. 27, 2026) (finding that the unreasonable delay claim in *Thigulla* was "premised on [a] predicate discretionary polic[y]…adopted under discretion-conferring provisions of the INA") (cleaned up).

The United States Attorney also relies on the Eighth Circuit's decision in *Fofana v. Noem*.[3] The United States Attorney argues that *Fofana* was "clear" on the point that "the jurisdictional bar extends to so-called 'unreasonable delay' suits" like Plaintiffs'. ECF. No. 14 at 5. However, I find *Fofana* may not be read

---

[3] A petition for a writ of certiorari was filed in the United States Supreme Court on April 7, 2026.

as broadly as the United States Attorney suggests.  In *Fofana*, the plaintiff sued the Secretary of Homeland Security and others "to challenge the denial of his application for adjustment of status to lawful permanent resident."  163 F.4th at 1137.  USCIS "determined Fofana was inadmissible because he had solicited money for [a terrorist organization]."  *Id.*  The plaintiff argued that although judicial review of the final denial of his application was clearly barred by § 1252(a)(2)(B)(ii), "§ 1159(b) contemplates a two-step process under which the Secretary first makes a non-discretionary determination about whether the alien has satisfied the five eligibility criteria for adjustment, and then makes a discretionary decision whether to adjust the alien's status."  *Id.* at 1138.  "On Fofana's view, the court has jurisdiction to review the first determination and lacks jurisdiction only with respect to the second."  *Id*.  The court rejected this view.  *Id.* at 1139.

First, the court found the Supreme Court's decision in *Patel v. Garland*, 596 U.S. 328, 336 (2022), instructive.  *Fofana*, 163 F.4th at 1138.  "The Court [in *Patel*] held that the phrase 'any judgment regarding the granting of relief' under § 1255 in [§ 1252(a)(2)(B)(i)] applies not only to the ultimate judgment to grant or deny relief, but also to *nondiscretionary determinations that are necessary in determining whether an applicant is eligible for relief*."  *Id.*  (emphasis added).  In light of *Patel*, the court held that the meaning of "any other decision or action" in

clause (ii) "is at least as broad as 'any judgment'" in clause (i).  *Id.*  Second, the court determined that "[a]ny judgment means 'judgments of whatever kind,' *Patel*, 596 U.S. at 338, and 'any other decision' thus naturally means decisions of whatever kind'—not just discretionary decisions or last-in-time decisions."  *Id.* at 1138-1139.  Therefore, the court concluded that because the authority to adjust Fofana's status was "specified under [the] subchapter to be in the discretion of…the Secretary, 8 U.S.C. § 1252(a)(2)(B)(ii)…the entire decision whether to adjust status—including the *decision* on whether Fofana is eligible—is insulated from judicial review."  *Id.* at 1139 (emphasis added).

Here, the United States Attorney replaces "including the decision on whether Fofana is eligible" with "including those [decisions] governing pace."  However, as Judge Pitlyk recently explained in *Tokas v. U.S. Citizenship & Immigr. Servs.*, finding that the court lacked subject matter jurisdiction required deciding that "each of the delays in adjudicating Mr. Tokas's applications qualifies as a 'decision or action' for the purposes of § 1252(a)(2)(B)(ii)."  2025 WL 3501066 at *2 (E.D. Mo. Dec. 6, 2025) (noting that the Eighth Circuit in *Thigulla* "did not explicitly address whether or when 'delay' qualifies as a 'decision'").  In *Fofana*, the eligibility determination, though non-discretionary, was still a predicate *determination* necessary in the final adjudication of Fofana's application.  *See Patel*, 596 U.S. at 343, 347 (holding § 1252(a)(2)(B)(i) precludes judicial review

13

of the Attorney's General's fact determinations "made in the course of exercising [his] statutory discretion").  Contrary to the United States Attorney's assertion that Plaintiffs' claim is "disingenuous," neither *Thigulla* nor *Fofana* appear to establish that the law is settled in this circuit on the precise issue raised by Plaintiffs.  ECF. No. 16 at 1.

Additionally, the United States Attorney filed a "Notice of Supplemental Authority" in this case, citing Judge Clark's opinion in *Mokone v. U.S. Citizenship & Immigr. Servs.* as further support for the position that this Court lacks jurisdiction.  2026 WL 850521 (E.D. Mo. Mar. 27, 2026).  Indeed, the court in *Mokone* held that § 1252(a)(2)(B)(ii) "strip[s] courts of jurisdiction over various cases alleging delayed processing of immigration petitions and applications." *Id.* at *2.  I will note, however, that the court in *Mokone* and the United States Attorney in its supporting memorandum cite to the Fifth Circuit, not the Eighth Circuit, for the explicit holding that "[s]ection 1255(a) expressly leaves not only the ultimate decision to adjust an applicant's immigration status but also actions taken in the course of the decision-making process—including the pace at which that process is undertaken—to the discretion of the [Secretary]." *Id.* at *4 (quoting *Cheejati v. Blinken*, 106 F.4th 388, 394 (5th Cir. 2024)) (internal quotations omitted); ECF. No. 14 at 6.  Although *Mokone* and *Tokas* are persuasive authorities, they are not binding on this Court, and neither is the Fifth Circuit's decision in *Cheerjati*.

Notably, the Eighth Circuit declined to take up the jurisdictional issue *sua sponte* in two cases where the plaintiffs, like the Plaintiffs in this case, alleged the adjudication of their I-485 applications was unreasonably delayed and/or unlawfully withheld under the APA. *See Irshad v. Johnson*, 754 F.3d 604, 606-07 (8th Cir. 2014) ("The officials do not contend on appeal that any statute precluded the district court from considering Irshad's claim, and we need not address question of 'statutory jurisdiction' *sua sponte*); *see also Debba v. Heinauer*, 366 F. App'x 696, 698 (8th Cir. 2010) (same). For over a decade, there has been a split of authority in the Eighth Circuit regarding whether federal courts have jurisdiction to review USCIS's pace of adjudication. Judge Ross described the split in *Bemba v. Holder*:

> "[S]ome courts have held that the statutory framework precludes judicial review of the pace at which the USCIS adjudicates LPR [Lawful Permanent Resident] applications, and other district courts have concluded that because the USCIS has a nondiscretionary duty to render a decision, courts must have jurisdiction in a mandamus suit alleging that the USCIS failed to adjudicate an application within a reasonable period of time, *or else the USCIS could indefinitely delay rendering a decision*" (emphasis added).

930 F. Supp. 2d 1022, 1028 (E.D. Mo. 2013) (agreeing with "those courts finding jurisdiction under the APA") (citing *Patel v. Chertoff*, No. 4:06CV01207 ERW, 2007 WL 1223553 (E.D. Mo. Apr. 24, 2007)) (collecting cases). The United States Attorney cites several district court opinions from both within and outside

15

this circuit that support its position.[4]  *See* ECF. No. 14 at 6-7.  But a growing

number of district courts have arrived at the opposite conclusion and exercised

jurisdiction based on various grounds.  Among the courts that have exercised

jurisdiction in similar cases or that have thoroughly considered the issue, there are

a few lines of reasoning that I find compelling, which I discuss below.

### III.    USCIS's alleged delay might be subject to judicial review.

Some district courts have determined that judicial review is not barred by

§ 1252(a)(2)(B)(ii) because USCIS's *lack of action* cannot be construed as a

"decision or action by the Attorney General."  *See, e.g.*, *Chen v. Mayorkas*, 736 F.

Supp. 3d 151 (E.D.N.Y. 2024) (finding that judicial review is not barred under a

similarly worded statute, § 1182(a)(9)(B)(v), because it "bars 'action by the

Attorney General,' not inaction"), vacated on other grounds, *Chen v. Noem*, No.

24-2058-CV, 2025 WL 1466205 (2d Cir. May 22, 2025);  *Mugomoke v. Curda*,

No. 2:10-CV-02166 KJM, 2012 WL 113800, at *4-5 (E.D. Cal. Jan. 13, 2012)

(concluding that "the authority to not act on an [I-485] application is not conferred

by any statute" and Congress "barred court review of discretionary decisions only

when Congress itself set out the Attorney General's discretionary authority in the

---

[4] The United States Attorney cites *Szelinger v. U.S. Citizenship & Immigr. Servs.*, 2025 WL 1727263 at *1 (D.S.C. Jun. 20, 2025), for the proposition that "courts 'generally have found that USCIC has discretion over the I-485 application process, including its pace, and that district courts therefore lack jurisdiction…'" ECF. No. 14 at 6.  This is misleading.  What the court actually stated was that "courts *within the Fourth Circuit and District of South Carolina* have generally found that USCIC has discretion over the I-485 application process, including its pace…" *Id.* at *1. The United States Attorney cannot make such a broad statement based on this case.

statute") (citing *Kucana*, 558 U.S. at 244); *Granados v. United States*, No. 23-CV-250-MEH, 2023 WL 5831515, at *5 (D. Colo. Aug. 23, 2023) ("I do not see *Patel* as governing the outcome of the present Motion to Dismiss, because that opinion involved review of an actual decision by the Government…I should not engage in an 'elaborate effort[ ] to avoid the most natural meaning of the [statutory] text.'") (quoting *Patel*, 596 U.S. at 340). In *Lovo v. Miller*, the Fourth Circuit analyzed the dictionary definitions of "decision" and "action" to determine the plain meaning of words under the INA. 107 F.4th 199, 207-08 (4th Cir. 2024). The court concluded that the definitions "each point to some affirmative conduct, not mere inaction or delay." *Id.* at 207. "In fact, Congress's decision to explicitly include the 'failure to act' within the APA's definition of agency action suggests Congress did not believe that inaction fell within the ordinary definition of 'action' as used in other statutes." *Id.*; *see also Kale v. Alfonso-Royals*, 139 F.4th 329, 335 (4th Cir. 2025) (applying the same logic to § 1252(a)(2)(B)(ii) and emphasizing that "agency *inaction* is not to be conflated with *action*").

Other courts have relied on the language of the applicable regulation and held that USCIS has a mandatory, non-discretionary duty to adjudicate adjustment of status applications. The regulation, 8 C.F.R. § 245.2(a)(5)(i), provides that an I–485 applicant "shall be notified of the decision of the director and, if the application is denied, the reasons for denial." *See, e.g.*, *Joshua v. Jaddou*, No.

1:24-CV-00667-JRR, 2025 WL 449001, at \*6-7 (D. Md. Feb. 10, 2025) (finding 8 C.F.R. § 245.2(a)(5)(i) imposes a non-discretionary duty to adjudicate an I-485 application "[i]n accordance with the Fourth Circuit's guidance on language that is 'sufficiently clear…to conclude that an agency is mandated to act'") (citation omitted); *Patel v. Cissna*, 400 F. Supp. 3d 1373, 1380 (M.D. Ga. 2019) (distinguishing regulations using the word "***may***" from "the government['s] non-discretionary duty to adjudicate an alien's adjustment of status application based on language in a regulation stating an applicant "***shall*** be notified of the decision of the director…") (emphasis in original) (citing *Choudhry v. Chertoff*, No. 1:07-CV-426-CAP, 2007 WL 9706374, at \*4 (N.D. Ga. Mar. 12, 2007)); *Varniab*, 2026 WL 485490 at \*10 ("Under either the default rule of § 555(b) or a non-discretionary duty imposed by 8 C.F.R. § 245.2(a)(5)(i) and 8 C.F.R. § 103.2(b)(18), the USCIS has a duty to decide I–485 applications…By its terms, subsection (B)(ii) concerns only statutory (not regulatory) bases for discretion.").

In *Lovo*, the Fourth Circuit determined that, absent an explicit jurisdictional bar on review of alleged agency inaction, the dispositive issue was whether USCIS was bound by the INA or its own regulations to adjudicate the plaintiffs' applications *at all*. 107 F.4th at 211. "To assess whether an agency is bound to act, we first look to the text of the relevant statutes and regulations." *Id.* The court held that USCIS was not mandated to make a decision on plaintiffs' waiver

18

applications under the relevant statutory and regulatory schemes, so the court lacked jurisdiction to review the alleged delay. *Id.* at 217. *Thigulla* only addressed the regulatory framework as it pertains to the visa allocation process. *See Thigulla*, 94 F.4th at 775-76 ("The discretion does not come from the regulation setting out the Adjudication Hold Policy. In fact, that regulation has no discretion.") (citing 8 C.F.R. § 245.2(a)(5)(ii)). The court did not opine on whether 8 C.F.R. § 245.2(a)(5)(i) imposes a non-discretionary duty on USCIS to adjudicate I-485 applications. *Thigulla* was about the Attorney General's "discretionary, statutory authority." *Id.* Whether USCIS is bound by its own regulations to eventually act on adjustment of status applications under 8 C.F.R. § 245.2(a)(5)(i) does not appear to have been decided by the Eighth Circuit. But "[i]t is a familiar rule of administrative law that an agency must abide by its own regulations." *Fort Stewart Schs. v. Fed. Lab. Rels. Auth.*, 495 U.S. 641, 654 (1990). The Fourth Circuit has held that a "regulation can mandate action even if a statute does not." *Lovo*, 107 F.4th at 212 (citing *Gonzalez v. Cuccinelli*, 985 F.3d 357, 374 n.10 (4th Cir. 2021)).

A number of courts that have considered whether USCIS has a non-discretionary duty to make a final decision on adjustment of status applications have held that the agency *does not* have discretion to perpetually delay a decision. Many of these courts have concluded that the default rule under the APA

forecloses this result, and USCIS therefore has a duty to act on adjustment of status applications within a reasonable time. *See, e.g.*, *Song v. Klapakas*, No. CIV.A.06-05589, 2007 WL 1101283, at *4 (E.D. Pa. Apr. 12, 2007) ("USCIS simply does not possess unfettered discretion to relegate aliens to a state of limbo, leaving them to languish there indefinitely.") (internal quotation omitted); *Burni v. Frazier*, 545 F. Supp. 2d 894 (D. Minn. 2008) ("[A]lthough neither [governing] statute specifies a time by which an adjudication should be made, we believe that by necessary implication the adjudication must occur within a reasonable time. A contrary position would permit the INS to delay indefinitely.") (internal quotation omitted); *Liang v. Att'y Gen. of U.S.*, No. C-07-2349 CW, 2007 WL 3225441, at *5 (N.D. Cal. Oct. 30, 2007) (Congress could not have intended to authorize potentially interminable delays.") (citation omitted); *Mugomoke*, 2012 WL 113800, at *4 (finding USCIS had a non-discretionary duty to act within a reasonable period of time and "[t]o hold otherwise would be to sanction the perpetual delay of governmental obligations that are clearly mandated by law").

Courts that have ultimately decided to exercise their jurisdiction analyze the reasonableness of USCIS's delay under the six factors set forth in *Telecommunications Research and Action Center v. Federal Communications Commission, et al.*, 750 F.2d 70 (D.C. Cir. 1984) (*TRAC*)." *See Abdi v. Flake*, No. 24-CV-00532 (JMB/JFD), 2024 WL 4373969, at *3 (D. Minn. Oct. 2, 2024)

20

(assuming jurisdiction over USCIS's allegedly unreasonable delay on plaintiff's I-130 application and applying the *TRAC* factors on a motion to dismiss); *see also Bemba*, 930 F. Supp. 2d at 1029-31 (applying the *TRAC* factors in case of alleged delay in adjudicating plaintiff's I-485 application).  The six *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a "rule of reason;"
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80.  If I find that I have jurisdiction in this case, I will apply these factors to determine whether USCIS's alleged delay of over four years in adjudicating Plaintiffs' I-485 applications is reasonable.[5]

## IV.   Conclusion

The Eighth Circuit has long recognized a "tradition of agency discretion over internal procedures" and that "[i]f the statute specifies that the decision is wholly

---

[5] Analysis under the *TRAC* factors would take place on a motion to dismiss filed by the United States Attorney under 12(b)(6) or at the summary judgment stage.

discretionary, regulations or agency practice will not make the decision reviewable." *Rajasekaran v. Hazuda*, 815 F.3d 1095, 1099 (8th Cir. 2016) (finding the court lacked subject matter jurisdiction to review the decision to revoke the plaintiff's I-140 petition). At the same time, the Supreme Court has emphasized the well-settled "presumption favoring judicial review of administrative action." *Kucana*, 558 U.S. at 251-52 ("Any lingering doubt about the proper interpretation of 8 U.S.C. § 1252(a)(2)(B)(ii) would be dispelled by [this] familiar principle of statutory construction."). This presumption cannot be dislodged without "clear and convincing evidence from Congress." *Id.* at 252. "While Congress pared back judicial review in IIRIRA, it did not delegate to the Executive authority to do so." *Id.* at 252-53. After all, Article III of the United States Constitution vests Congress, not the Executive Branch, with the authority to limit the Court's jurisdiction. The issue of how broadly an agency can interpret ambiguous language in a jurisdiction-stripping statute is not easily settled. Writing for the Third Circuit, Justice Alito put it this way:

> [W]e do not think…that the use of marginally ambiguous statutory language, without more, is adequate to "specific [y]" that a particular action is within the Attorney General's discretion for the purposes of § 1252(a)(2)(B)(ii). Of course, in a sense, an agency generally has "discretion" under *Chevron* to interpret ambiguous language used in a statute it administers. But if that sort of ubiquitous "discretion" were sufficient by itself to satisfy § 1252(a)(2)(B)(ii), the effects of that jurisdictional bar would be sweeping indeed. We do not believe that Congress intended such a result.

*Soltane v. U.S. Dep't of Just.*, 381 F.3d 143, 147-148 (3d Cir. 2004).

Because I believe the issue presented in this case requires careful consideration and thorough briefing, I will request the parties provide supplemental briefing on the following:

(1) Whether the Eighth Circuit's decisions in *Thigulla* and *Fofana* are distinguishable from Plaintiffs' case.
(2) Whether alleged agency "inaction" on Plaintiffs' adjustment of status applications should be considered a "decision or action" of the Attorney General under the relevant statutes.
(3) Whether 8 C.F.R. § 245.2(a)(5)(i), when read in conjunction with the APA, imposes a non-discretionary duty on USCIS to adjudicate Plaintiff's adjustment of status applications within a reasonable time.
(4) Whether the United States Attorney's position would sanction USCIS's potentially indefinite delay in adjudicating Plaintiffs' status adjustment applications.

Accordingly,

**IT IS HEREBY ORDERED** that the parties shall provide supplemental briefing on the specified issues regarding this Court's subject matter jurisdiction **no later than May 21st, 2026.**

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 21st day of April, 2026.

23