**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **B. ROKA and S. KHATRI,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:25-CV-01697-RWS** |
| | ) | |
| **MARKWAYNE MULLIN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' SUPPLEMENTAL BRIEF**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

**COME NOW** Defendants, Markwayne Mullin, Joseph B. Edlow, and Pamela Bondi,[1] in

their official capacity, by and through their attorneys, Thomas C. Albus, United States Attorney

for the Eastern District of Missouri, and Shane K. Blank, Assistant United States Attorney for said

District, and for their Supplemental Brief in Support of a Motion to Dismiss under Rule 12(b)(1),

state as follows:

## I. INTRODUCTION

On April 21, 2026, this Court ordered supplemental briefing on four issues: the

applicability of *Thigulla* and *Fofana* to this case; whether "inaction" constitutes a "decision or

action" of the Attorney General under 8 U.S.C. § 1252(a)(2)(B)(ii); the effect of 8 C.F.R. §

245.2(a)(5)(i) on that analysis; and whether "the United States Attorney's position would sanction

USCIS's potentially indefinite delay in adjudicating Plaintiffs' status adjustment applications."

ECF 18, p. 23.

---

[1] Pamela Bondi should be substituted for Todd Blanche, who is the Acting U.S. Attorney General as of April 2, 2026.

Before that order, and through evolving, back-and-forth motion practice, see ECF 16, p. 2; ECF 17, p. 2, the undersigned AUSA directed the Court to four decisions from the Eighth Circuit and the Eastern District of Missouri that the Government believed resolved this case by holding that this Court lacks subject-matter jurisdiction: Fofana v. Noem, 163 F.4th 1135, 1137 (8th Cir. 2026); Thigulla v. Jaddou, 94 F.4th 770 775 (8th Cir. 2024); Mokone v. U.S. Citizenship & Immigr. Servs., 2026 WL 850521 at *4 (E.D. Mo. Mar. 27, 2026) (Clark, J.); Tokas v. U.S. Citizenship & Immigr. Servs., 2025 WL 3501066 at *2 (E.D. Mo. Dec. 6, 2025) (Pitlyk, J.).[2]

This Court considered those authorities but concluded they may be distinguishable or, in the case of this Court's own decisions, non-binding.[3] It emphasized that "unlike the plaintiffs in *Thigulla*, the Plaintiffs' status adjustment applications *in this case have a current priority date*." ECF 18, p. 11 (emphasis in original). Plaintiffs here, therefore, challenge "USCIS's alleged *failure to make a decision at all* concerning their applications within a reasonable period of time." Id. (emphasis in original). This Court also noted "although *Mokone* and *Tokas* are persuasive authorities, they are not binding on this Court, and neither is the Fifth Circuit's decision in *Cheejati*"—on which Judge Clark's *Mokone* opinion relied. ECF 18, p. 14. The Court further noted that "for over a decade, there has been a split of authority in the Eighth Circuit regarding whether federal courts have jurisdiction to review USCIS's pace of adjudication. Judge Ross described the split in *Bemba v. Holder*." Id. at p. 15 (citing Bemba v. Holder, 930 F.Supp.2d 1022, 1028 (E.D. Mo. 2013)).

---

[2] Judge Bodenhausen's opinion in *Haydary* may also prove persuasive. See Haydary v. Garland, 2024 WL 4880406 at *5 (E.D. Mo. Nov. 25, 2024) (Bodenhausen, M.J.) (the decision not to expedite a request for humanitarian parole, "an inaction as it were," was barred from review under Section 1252(a)(2)(B)(ii) as guided by *Thigulla*).

[3] "While the judges of a unified federal district are not constitutionally or legally bound to march in lockstep, the seeds of chaos are sown if a single court prances off in sharply conflicting directions." Fricker v. Town of Foster, 596 F.Supp. 1353 (D.R.I. 1984).

In deciding that it may distinguish or otherwise disagree with *Thigulla*, *Fofana*, *Mokone*, and *Tokas*, this Court finds several "lines of reasoning … compelling." ECF 18, p. 16. First, it noted that "some district courts"—those outside of the Eighth Circuit—"have determined that judicial review is not barred by Section 1252(a)(2)(B)(ii) because USCIS's lack of action cannot be construed as a 'decision or action by the Attorney General.'" Id. Other courts, meanwhile, "have relied on the language of the applicable regulation and held that USCIS has a mandatory, non-discretionary duty to adjudicate adjustment of status applications"—citing 8 C.F.R. § 245.2(a)(5)(i). Id. at p. 17. This Court further explained that "whether USCIS is bound by its own regulations to eventually act on adjustment of status applications under 8 C.F.R. § 245.2(a)(5)(i) does not appear to have been decided by the Eighth Circuit." Id. at p. 19. Finally, it determined that the familiar *TRAC* Factors "will apply" if it "finds that [there] is jurisdiction in this case." Id. at p. 21.

## II. ANALYSIS

### A. Mandamus Litigation Leading up to *Patel*: Judicial Reprioritization of Agency Queues Under the TRAC Factor Framework.

Despite the Eighth Circuit's admonition that such relief be reserved for "extraordinary situations," *Mandamus*-based "unreasonable delay" litigation has, in practice, come to dominate the average AUSA's immigration docket. See Org. for Competitive Markets v. U.S. Dep't of Agric., 912 F.3d 455, 462 (8th Cir. 2018) (concluding that APA "unreasonable delay" claims under Section 706(1) are properly analyzed through "the mandamus approach," given the absence of "an implied grant of subject-matter jurisdiction" in the APA, and that Section 706(1) relief must therefore be limited to "an extraordinary situation" warranting the "extraordinary remedy" of mandamus). Since 2020, see **EXHIBIT A** cited infra, the undersigned AUSA estimates that approximately 70–80% of his civil immigration workload now consists of *mandamus* requests.

The longstanding assumption has been that the mere filing of a mandamus action would prompt the Government to moot the case rather than divert limited resources to defend it. Candidly, that has been the practice in this District—particularly after this Court held that the *TRAC* Factors are better suited to summary judgment, effectively foreclosing threshold Rule 12(b)(6) dismissals of unmeritorious cases. [4] See Wilkes v. Blinken, 2022 WL 1288402 at \*7 (E.D. Mo. Apr. 29, 2022)

---

[4] One of the principal tools courts rely on when asked to invoke their equitable powers to reorder an agency's queue is the six-factor framework articulated in *Telecomms. Research & Action Ctr. v. FCC* ("TRAC"), 750 F.2d 70 (D.C. Cir. 1984). Although widely cited, the *TRAC* Factors are far from universally adopted. The First, Second, Sixth, and Ninth Circuits have either expressly adopted them or acknowledged their applicability. See Vaz v. Neal, 33 F.4th 1131, 1137 (9th Cir. 2022); Barrios Garcia v. U.S. Dep't of Homeland Sec., 25 F.4th 430, 451 (6th Cir. 2022); Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin., 710 F.3d 71, 84 (2d Cir. 2013); Towns of Wellesley, Concord & Norwood, Mass. v. FERC, 829 F.2d 275, 277 (1st Cir. 1987). The Eighth Circuit has applied them only once—and then solely because the parties relied on them—without otherwise endorsing the framework. See Irshad v. Johnson, 754 F.3d 604, 607 (8th Cir. 2014). The Fifth Circuit has declined to adopt them. See Li v. Jaddou, 2023 WL 3431237 at \*1, n.2 (5th Cir. 2023). The Fourth Circuit has merely observed that a "district court is not limited to these factors and is not required to use them." Gonzalez v. Cuccinelli, 985 F.3d 357, 375 (4th Cir. 2021). The Third and Tenth Circuits apply their own formulations, each essentially a modified version of *TRAC*. See Prometheus Radio Project v. Fed. Commc'ns Comm'n, 824 F.3d 33, 39 (3d Cir. 2016) (citing *TRAC* generally, but acknowledging its own four-part test); Qwest Commc'ns Int'l, Inc. v. F.C.C., 398 F.3d 1222, 1239 (10th Cir. 2005) (applying a five-part test) The Seventh Circuit has not meaningfully addressed them beyond a single concurrence. See Menominee Indian Tribe of Wisconsin v. Env't Prot. Agency, 947 F.3d 1065, 1075 (7th Cir. 2020) (Hamilton, J. concurring). And the Eleventh Circuit's "unreasonable delay" jurisprudence remains comparatively undeveloped. In short, the *TRAC* Factors are not nearly as ubiquitous as a survey of district court opinions might suggest.

The *TRAC* framework suffers from a serious structural flaw: because it is so "fact intensive," despite being applied to an extraordinary writ reserved for extraordinary situations, it often prevents early dismissal and forces litigation past the Rule 12 stage. Al Otro Lado v. Exec. Off. for Immigr. Rev., 138 F.4th 1102, 1121 (9th Cir. 2025) ("The reasonableness of any delay is a fact-intensive inquiry analyzed under "the so-called TRAC factors."); see also Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003) ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court."). Unsurprisingly, many district courts—explicitly or implicitly—have concluded that Rule 12(b)(6) is ill-suited for evaluating the *TRAC* Factors, effectively requiring parties to proceed through Rule 56 summary-judgment practice instead. Wilkes v. Blinken, 2022 WL 1288402 at \*5 (E.D. Mo. Apr. 29, 2022) (recognizing the "debate" that exists regarding "whether a district court properly considers the TRAC Factors at the motion-to-dismiss stage"); accord Niyomwungere v. Mayorkas, 2025 WL 1865810 at \*4 (D. Ariz. July 7, 2025) (recognizing the "disagreement" within the circuit regarding whether the TRAC Factors should be analyzed as part of a motion to dismiss); Hassan v. Bitter, 748 F.Supp.3d 722, 749 (D. Neb. 2024) ("The question of whether the *TRAC* factors apply at the motion-to-dismiss stage is not settled in this Circuit."); Barsov v. Mayorkas, 2024 WL 4830601 at \*4 (C.D. Cal. Sept. 10, 2024) ("Courts, even within this district, disagree as to whether it is appropriate to analyze the TRAC factors at the motion to dismiss stage because of their 'fact-intensive' nature."). This dynamic creates a largely unseen but consequential dilemma for the Government, which is already strained by the very resource limitations that fuel many delay suits. Agencies must choose whether to divert scarce resources to moot the case—thereby avoiding the burdens of motion practice, discovery, and prolonged litigation—or press forward to summary judgment, consuming even more time and further clogging both agency operations and judicial dockets.

4

(Clark, J.) (concluding the *TRAC* Factors are too fact-intensive for resolution on a Rule 12(b)(6) motion and require a "fulsome record," thereby implying summary judgment—not threshold Rule 12(b)(6) arguments—is the proper posture for evaluating "unreasonable delay" claims). A review of cases generated from this Court's CM-ECF system shows a sharp rise in *mandamus* filings since 2020, many of which are stayed  and then mooted within weeks or months through Notices of Voluntary Dismissal. See, e.g., CM-ECF Civil Report 2016-2026 for Codes 465, 540, 890 attached hereto as **EXHIBIT A**. This has certainly been the experience of the undersigned AUSA, who— after succeeding a long-serving predecessor and assuming responsibility for all civil immigration matters—has observed a marked surge in delay-lawsuit filings. The incentive to work these cases quickly to relieve the Court's docket, ordinarily a commendable instinct, has paradoxically encouraged the filing of even more delay complaints, often submitted through effortless, boilerplate templates—one would question, then, if *Twombly* or *Iqbal* would have a say in the

---

The result, as several courts have recognized, is that "unreasonable delay" litigation can devolve into a strategic game in which plaintiffs' counsel wield the threat of ongoing litigation as leverage to jump ahead of others in the queue—a phenomenon one court has described as the "Sword of Damocles" approach. Meixian Ye, 2017 WL 2804932 at *2; see also Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 339 (D.C. Cir. 2023) (criticizing relief that "would involve disfavored line-jumping" by placing one applicant ahead of others waiting their turn); Calderon-Ramirez v. McCament, 877 F.3d 272, 275 (7th Cir. 2017) (warning against outcomes that let one litigant cut the line at the expense of others who, all else being equal, are waiting just as long.); Sivananthan v. Blinken, 2023 WL 4885858 at *4 (D.D.C. Aug. 1, 2023) (compiling case). District courts, seemingly aware that the *TRAC* framework creates a perverse incentive for agencies to moot cases (thereby encouraging even more filings), have at times responded by crafting *de facto* bright-line rules. Under these rules, a delay is deemed not "unreasonable" as a threshold matter—often at the Rule 12 stage—so long as the application has been pending for fewer than a certain number of months or years. See Sarlak v. Pompeo, 2020 WL 3082018 at *6 (D.D.C. June 10, 2020) (noting that while no bright lines have been drawn, delays between three to five years are generally not considered unreasonable) (collecting cases); Ngwi v. Noem, 2026 WL 456573 at *6 (D. Md. Feb. 18, 2026) ("This Court has routinely held that delays of three-to-four years are not unreasonable."); Ahadian v. Rubio, 2025 WL 1617224 at *8 (D. Mass. Jun. 6, 2025) (21-month lapse in time was implicitly "not outside the bounds of reasonableness"); see also Chang v. Jaddou, 2025 WL 2015143 at *6 (S.D.N.Y. Jul. 18, 2025) (looking to other courts involving "applications that were pending for periods similar to, or longer than, the delay" faced and concluding a roughly four-to-five year delay was not unreasonable thereby). The result is an arbitrary temporal cutoff that substitutes for genuine analysis and reflects the judiciary's attempt to blunt the incentive structure the *TRAC* Factors inadvertently created.

matter of pleading sufficiency. If any statistic stands out, it is this: virtually none of the cases cited in **EXHIBIT A** reached a Rule 16 conference or discovery, and most were never even answered. They were resolved hastily and out of court—an unmistakable indication that delay-lawsuit litigants are, at some point, receiving preferential treatment simply to avoid unnecessary litigation. The undersigned AUSA has a duty to bring this practice to an end.

But it goes further. This Court, too, has an obligation to not merely reprioritize agency prerogatives in an arbitrary way. Despite the number of months that have passed on Plaintiffs' I-485, that alone does not signal the need for extraordinary mandamus relief. Indeed, the D.C. Circuit, which has shaped much of the governing appellate framework for assessing "unreasonable delay" in immigration adjudications—including creating the *TRAC* Factors that this Court has signaled it will use—has repeatedly emphasized the need to account for competing agency priorities. See Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1101 (D.C. Cir. 2003) (remarking "we have noted before the importance of competing priorities in assessing the reasonableness of an administrative delay," and noting the "problem stem[s] from a lack of resource" that is "a problem for the political branches to work out"); see also Mass. v. EPA, 549 U.S. 497, 527 (2007) ("As we have repeated time and again, an agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities."). It has also declined to grant relief where doing so would merely "put the petitioner at the head of the queue," shifting everyone else back a step and yielding "no net gain." In Re Barr Lab'ys, Inc., 930 F.2d 72, 75 (D.C. Cir. 1991). This case has not alleged Plaintiffs are being uniquely singled out for treatment; to the contrary, as this Court has recognized, an RFE is currently pending, which Plaintiffs must respond to by May 13, 2026, if at all. ECF 18, p. 3.

The problem facing the Government, in times past, is reflected well in an opinion from Judge Brian Cogan of the Eastern District of New York:

> There is a practice in this district by which immigration applicants file suit under the APA and for mandamus relief as a way to gain adjudication of their applications more quickly by moving their applications to the front of the line. Here, plaintiff's complaint has achieved that intended purpose. Having done so, she seeks to press her advantage further, holding this lawsuit over defendants' heads like the Sword of Damocles, so that they will be incentivized to act on her application, knowing that if they do not, she can press ahead with this lawsuit.

Meixian Ye v. Kelly, 2017 WL 2804932 at *2 (E.D.N.Y. June 28, 2017).

### B. *Patel* and the Post-*Patel* Framework Established by the Eighth Circuit and Eastern District of Missouri in *Thigulla*, *Tokas*, *Fofana*, and *Mokone*.

A sea change occurred in 2022 when the U.S. Supreme Court decided Patel v. Garland, 596 U.S. 328 (2022).[5] There, the Supreme Court "granted certiorari to resolve the conflict" involving a deep appellate split "as to the scope of 8 U.S.C. § 1252(a)(2)(B)(i)." Id. at 336 (cleaned up). The Supreme Court stated plainly that "Section 1252(a)(2)(B)(i) strips courts of jurisdiction to review 'any judgment regarding the granting of relief' under Section 1255. The outcome of this case largely turns on the scope of the word 'judgment,' an issue on which the parties and amicus have [] competing views." Id. at 336-37. Ultimately, the Supreme Court determined that "the provision does not restrict itself to certain kinds of decisions. Rather, it prohibits review of *any* judgment *regarding* the granting of relief under Section 1255 and the other enumerated provisions.

---

[5] *Patel* has produced a significant doctrinal shift—one substantial enough that earlier cases, including *Bemba*, may now be fairly called into question. To be sure, Judge Ross was careful to note the Eighth Circuit had yet to decide the "pace of adjudication" problem. See 930 F.Supp.2d at 1028. And Judge Ross only agreed to find jurisdiction because "until this issue is decided [by the Eighth Circuit]," Section 5 U.S.C. § 555(b) tended to suggest a jurisdictional hook of some sort tethered either to unreasonable delays or outright failures to act—in his case, an I-485 that had been delayed for six years. Id. Comparatively, the Supreme Court in *Patel* held that "any" in Section 1252(a)(2)(B)(i) is "expansive" and means "judgments of whatever kind"—the term "judgment" being the operative term in clause (i). The Eight Circuit, in *Fofana*, explained "clause (ii) is not narrower; it is just phrased differently." 163 F.4th at 1139. Thus, clause (ii)'s "any decision or action" necessarily means a "decision or action [**of whatever kind**]" to combine the thinking of *Patel* and *Fofana*. This breadth absolutely captures any "decision or action" related to pacing—that fits comfortably into the "of whatever kind" language of *Patel*.

7

As this Court has repeatedly explained, the word 'any' has an expansive meaning." Id. at 338 (emphasis in original; internal quotations omitted).

Two years later, the Eighth Circuit confronted *Patel* and extended its reasoning to Section 1252(a)(2)(B)(ii). See Thigulla v. Jaddou, 94 F.4th 770 (8th Cir. 2024). In *Thigulla*, similar to here, the plaintiffs sought to adjust status by filing I-485 applications to move from lawful nonimmigrant status on temporary work visas to lawful permanent residents. Id. at 772. After their priority dates retrogressed, USCIS delayed adjudication of their applications. Id. at 772–73. As the Eighth Circuit explained, "by changing the priority date, USCIS delayed adjudicating the Thigullas' status adjustment applications." Id. at 773. The plaintiffs sued under the APA, seeking to compel USCIS to promptly decide their applications. Id. The court held that "the text of Section 1252(a)(2)(B)(ii) and Section 1255(a) is clear and convincing evidence that Congress intended to preclude judicial review of the Attorney General's discretionary decisions ***about the status adjustment process*** under Section 1255(a), like the [retrogression hold policies]." Id. at 776 (emphasis added; cleaned up).

A few months later, the Fifth Circuit followed *Thigulla*'s lead. See Cheejati v. Blinken, 106 F.4th 388 (5th Cir. 2024). Once again, the Fifth Circuit looked to *Patel* and extrapolated from it that Section 1252(a)(2)(B)(ii) "strips federal courts of jurisdiction to review *any discretionary* decision or action rendered by the Attorney General." Id. at 394 (emphasis in original). Thus, like *Thigulla*, the Fifth Circuit held that USCIS's retrogression hold policies applicable to an I-485 were insulated from review. Id. at 395. The Fifth Circuit also noted "there is no evidence in the text of the statute that Congress intended to strip federal courts of jurisdiction as to one type of discretionary conduct, but not as to another." Id. at 396.

In December 2025, Judge Pitlyk of this Court looked to *Thigulla* in assessing alleged unreasonable delay in adjudicating both an I-360 and an I-485. See <u>Tokas v. U.S. Citizenship & Immigr. Servs.</u>, 2025 WL 3501066 at *2 (E.D. Mo. Dec. 6, 2025) (Pitlyk, J.). Judge Pitlyk observed that "the Eighth Circuit [] advised that Section 1252(a)(2)(B)(ii) applies if two elements are present: (1) a decision or action by the Attorney General or the Secretary of Homeland Security; and (2) statutorily specified discretion under Subchapter II of Chapter 12 of Title 8 (8 U.S.C. §§ 1151–1381) (Subchapter II)." <u>Id</u>. at *2. Both the I-360 and the I-485 fell within Subchapter II— Sections 1229b(2) and 1225(a), respectively—and so the question was "whether the alleged delay qualifies as a 'decision or action' for purposes of the statute." <u>Id</u>. Judge Pitlyk concluded that the hold policy in *Thigulla* was functionally a "decision to delay" adjudication, and that the unspecified delay in *Tokas* likewise constituted, at minimum, either a "decision or action" about the pace of deciding the I-485. <u>Id</u>. (noting, from *Thigulla*, that "the Court did not emphasize that the delay had been announced publicly or that it applied to a category of applicants or in any other way suggest that some delays in adjudicating applications might not qualify as 'decisions' for purposes of § 1252(a)(2)(B)(ii)."). Thus, Judge Pitlyk held that "the process of adjudicating an adjustment of status claim under Section 1255(a), including setting a timeframe, is within the Attorney General's discretion" and therefore barred from review under Section 1252(a)(2)(B)(ii). <u>Id.</u> at *3. In short, the choice of deciding when to adjudicate an I-485 was "a challenge to discretionary agency action" that the Eighth Circuit, through Section 1252(a)(2)(B)(ii), has concluded is insulated from judicial review. <u>Id</u>.

Then, in early 2026, the Eighth Circuit decided <u>Fofana v. Noem</u>, 163 F.4th 1135 (8th Cir. 2026). In *Fofana*, the court considered whether it had jurisdiction to review USCIS's decision denying the plaintiff's I-485 application for adjustment of status to lawful permanent resident. <u>Id</u>.

9

at 1137. Again, the Eighth Circuit relied on Patel and reasoning that like clause (i) under Section 1252(a)(2)(B), clause (ii) insulates a decision or action from review when a statute specifies that the ultimate authority to grant relief is in the discretion of the Secretary; and thus, such decisions are not limited only to those that are "discretionary." Id. at 1139. As the Eighth Circuit put it, "Patel establishes that the unreviewable decision—'any decision,' like 'any judgment'—is not limited to a final discretionary decision **but includes the Secretary's decision <u>on all aspects of the application for adjustment</u>**." Id. (emphasis added).

Following *Fofana*, *Tokas*, *Cheejati*, and *Thigulla*, Judge Clark of this Court then decided Mokone v. U.S. Citizenship & Immigr. Servs., 2026 WL 850521 at *4 (E.D. Mo. Mar. 27, 2026) (Clark, J.). There, as similar to *Tokas* and here, Judge Clark was faced with an I-360 and I-485. Id. at *1. As Judge Pitlyk had done in *Tokas*, Judge Clark did the same in *Mokone* observing *Thigulla*'s "two elements [that] trigger § 1252(a)(2)(B)(ii)'s jurisdictional bar: (1) a decision or action by the Attorney General or the Secretary of Homeland Security; and (2) statutorily specified discretion [under Subchapter II]." Id. at *2. Once more, the I-360 and the I-485 fell within Subchapter II, Id. at *3, so the question was whether "determining when to a adjudicate [the] I-360 and I-485s is among the discretionary decisions or actions preclud[ed] under Section 1252(a)(2)(B)(ii)." Id. Having the benefit of the Eighth Circuit's analysis in *Fofana*, Judge Clark expanded on *Tokas* by noting "Section 1252(a)(2)(B)(ii) refers to … decisions or actions of whatever kind[.]" Id. at *2. Judge Clark concluded that "decisions involving the pace of investigation and subsequent adjudication are among the decisions 'of whatever kind'" in *Fofana*. Id. at *4 (cleaned up).

### C.  A Post-*Patel* Survey of Caselaw Within the District Courts Governed by the Eighth Circuit.

As this Court is aware, the Eighth Circuit encompasses the district courts of Arkansas, Iowa, Minnesota, Missouri, Nebraska, North Dakota, and South Dakota. While some of these

courts have not yet addressed *Thigulla* or its progeny, those that have considered the issue overwhelmingly conclude that, following *Thigulla* (and later *Fofana*), the pace of adjudication falls within Section 1252(a)(2)(B)(ii)'s jurisdictional bar. See <u>Ahmad Bin Nasrullah v. U.S. Citizenship & Immigr. Servs.</u>, 2026 WL 915069 at *4 (D.N.D. Apr. 3, 2026) (Hochhalter, M.J.); <u>Mokone v. U.S. Citizenship & Immigr. Servs.</u>, 2026 WL 850521 at *4 (E.D. Mo. Mar. 27, 2026) (Clark, J.);  <u>Prada Munoz v. U.S. Citizenship & Immigr. Servs.</u>, 2026 WL 322513 at*3 (D. Neb. Feb. 6, 2026) (Bazis, J.); <u>Prajapati v. Alfonso-Royals</u>, 2026 WL 36451 at *4 (W.D. Mo. Jan. 6, 2026) (Kays, J.); <u>Tokas v. U.S. Citizenship & Immigr. Servs.</u>, 2025 WL 3501066 at *2 (E.D. Mo. Dec. 6, 2025) (Pitlyk, J.); <u>Barad v. Noem</u>, 2025 WL 1725322 at *3 (D. Neb. Jun. 20, 2025) (Bataillon, J.); <u>Patel v. U.S. Citizenship & Immigr. Servs.</u>, 2025 WL 1655294 at *3-5 (D. Neb. Jun 11, 2025) (Rossiter, J.);  <u>Amaya v. Dir., U.S. Citizenship & Immigr. Servs.</u>, 2025 WL 1295330 at *8-9 (D. Neb. May 5, 2025) (Buescher, J.);  <u>Joshi v. Garland</u>, 728 F. Supp. 3d 1028, 1033 (D. Neb. 2024) (Gerrard, J.); <u>cf</u>. <u>Haydary v. Garland</u>, 2024 WL 4880406 at *5 (E.D. Mo. Nov. 25, 2024) (Bodenhausen, M.J.) (the decision not to expedite a request for humanitarian parole, "an inaction as it were," was barred from review under Section 1252(a)(2)(B)(ii) as guided by *Thigulla*).[6]

---

[6] There are some notable highlights: <u>Joshi</u>, 728 F.Supp.3d at 1033("The plaintiffs suggest (responding to an argument the defendants *didn't* make) that discretion doesn't include the discretion not to act. But that argument is precluded by the Eighth Circuit's decision in *Thigulla*, which applied Section 1252(a)(2)(B)(ii) to discretionary decisions about the decision-making process, not just the result."); <u>Prajapati</u>, 2026 WL 36451 at *4 (quoting <u>Thigulla</u>, 94 F.4th at 776) ("Congress clearly placed the granting of employment authorization within USCIS' discretion. Under Section 1252(a)(2)(B)(ii), courts do not have jurisdiction to review the granting or withholding of such authorization. The Eighth Circuit regards the process an agency uses—including delays— for making discretionary determinations as also within the agency's statutory discretion and therefore also outside courts' jurisdiction, agency practice notwithstanding. 'If the statute specifies that the decision is wholly discretionary, regulations or agency practice will not make the decision reviewable.'"); <u>Prada Munoz</u>, 2026 WL 322513 at *3 (quoting <u>Thigulla</u>, 94 F.4th at 777) ("Prada Munoz suggests in his complaint that the Court can provide the relief requested in this case because it will only be ordering USCIS to make a decision, not directing USCIS how to exercise its discretion. But that argument is precluded by the Eighth Circuit's decision in *Thigulla*, which applied § 1252(a)(2)(B)(ii) to discretionary decisions about the decision-making process, not just the result. Under these circumstances, the Court must defer to 'Congress's broad prohibition of judicial review in § 1252(a)(2)(B)(ii)' and 'the tradition of agency discretion over internal procedures.'").

**D. Addressing Each of This Court's Questions in its Order for Further Briefing.**

With the above backdrop, the undersigned AUSA endeavors to answer each of this Court's questions from its Order requesting further briefing. See ECF 18, p. 23:

> i. *"Whether the Eighth Circuit's decisions in Thigulla and Fofana are distinguishable from Plaintiffs' case" AND "whether alleged agency 'inaction' on Plaintiffs' adjustment of status applications should be considered a 'decision or action' of the Attorney General under the relevant statutes."*

Recalling that this case involves a purported delay over deciding an I-485, the undersigned AUSA does not believe *Thigulla* and/or *Fofana* can be meaningfully distinguished from this case.[7] This Court noted that, unlike *Thigulla*, "the Plaintiffs' status adjustment applications in this case have a current priority date." ECF 18, p. 11. Essentially, this Court seems to be drawing a <u>factual distinction</u> in this case from *Thigulla*, where plaintiffs' priority dates retrogressed and USCIS delayed adjudication of their applications as a result. But, as myriad caselaw correctly identifies above, including Judges Clark and Pitlyk of this Court, *Thigulla* made a brightline <u>legal rule</u>—not a fact-intensive one—for determining whether to apply Section 1252(a)(2)(B)(ii):

> Two elements trigger § 1252(a)(2)(B)(ii)'s jurisdictional bar: **(1)** a decision or action by the Attorney General or the Secretary of Homeland Security; and **(2)** statutorily specified discretion [under Subchapter II].

<u>Mokone</u>, 2026 WL 850521 at *2 (E.D. Mo. Mar. 27, 2026) (Clark, J.) (cleaned up; <u>quoting</u> Thigulla, 94 F.4th at 774); <u>accord</u> <u>Tokas</u>, 2025 WL 3501066 at *2 (Pitlyk, J.).

---

[7] "Adjustment of status" is a statutory mechanism that allows certain noncitizens already present in the United States—most commonly nonimmigrant visa holders, but also parolees and certain individuals in special humanitarian categories—to obtain lawful permanent residence without leaving the country. See 8 U.S.C. § 1255. Indeed, Section 1255 "provides a way for a nonimmigrant—a foreign national lawfully present in this country on a designated, temporary basis—to obtain an adjustment of status making him a Lawful Permanent Resident (LPR)." <u>Sanchez v. Mayorkas</u>, 593 U.S. 409, 411 (2021) (cleaned up); <u>see also</u> 8 U.S.C. § 1255. An LPR is colloquially referred to as a "green-card holder," but does not share the same protections as a U.S. citizen; they are, for example, still removable for serious crimes. See <u>Barton v. Barr</u>, 590 U.S. 222, 224 (2020). An adjustment of status to LPR is sought by filing an I-485, *Application to Register Permanent Residence or Adjust Status*, with USCIS. Notably, "adjustment of status is a matter of grace, not right." <u>Elkins v. Moreno</u>, 435 U.S. 647, 667 (1978).

12

There is no serious argument whether the ultimate decision upon an I-485 is discretionary. See Mokone, 2026 WL 850521 at *3 (noting an I-485 is discretionary as through 8 U.S.C. § 1255). The only question is whether pacing decisions or pacing actions, as the case may be, fall within the confines of a "decision or action" under *Thigulla's* first prong.

The Eighth Circuit has definitively ruled on this. Beginning with *Rajasekaran*, the court recognized that Section 1252(a)(2)(B)(ii) reflects "Congress's broad prohibition of judicial review" extending even to "agency's ***discretionary procedural decisions***, such as how to respond to discovery." Rajasekaran v. Hazuda, 815 F.3d. 1095, 1099 (8th Cir. 2016) (emphasis added). As Judge Easterbrook later explained in a parallel context, although "delay in addressing an application is not a 'decision' on that application,"  the "problem is that courts lack jurisdiction to review a 'decision *or* action,'" which necessarily encompasses procedural and administrative choices like "setting priorities—for example, how many employees to assign to processing applications under this clause, as opposed to handling other duties," which "is an 'action'" in itself. Cf. Soni v. Jaddou, 103 F.4th 1271, 1273 (7th Cir. 2024) (Easterbrook, J.) (considering jurisdiction-stripping provision of 8 U.S.C. § 1182(a)(9)(B)(v), which is similarly worded to 8 U.S.C. § 1252(a)(2)(B)(ii) at issue here). *Thigulla* made this obvious, concluding Section 1252(a)(2)(B)(ii) applies to the entire "***status adjustment process*** under Section 1255(a)," to include—but not be limited factually limited to—USCIS's decision to invoke a hold policy. Thigulla, 94 F.4th at 776 (emphasis added). And *Fofana* simply amplified this holding, noting that *Patel* "establishes that the unreviewable decision"—or "action," as it may be—"is not limited to a final discretionary decision, but includes … ***all aspects of the application for adjustment***." Fofana, 163 F.4th at 1139 (emphasis added). The Fifth Circuit, relying on *Thigulla*, simply stated the matter most clearly: Section 1252(a)(2)(B)(ii) "leaves not only the ultimate decision to adjust an

13

applicant's immigration status but also actions taken in the course of the decision-making process—***including the pace at which that process is undertaken***—to the discretion of the Attorney General." <u>Cheejati v. Blinken</u>, 106 F.4th 388, 394 (5th Cir. 2024) (emphasis added).

Plaintiffs' position reduces to the claim that because USCIS has not adjudicated their I-485 today (or on their preferred timetable), it has made no "decision or action" at all. But inaction is not an absence of choice. <u>Cf</u>. <u>Heckler v. Chaney</u>, 470 U.S. 821, 831 (1985) (treating an agency's choice not to prosecute or enforce as "a decision generally committed to an agency's absolute discretion"). The decision to defer a particular adjudication today reflects a larger, deliberate choice over the proper allocation of limited resources—whether characterized as a "decision" or as an interim "action" taken in implementing the broader discretionary framework.

> **i.** **"Whether 8 C.F.R. § 245.2(a)(5)(i), when read in conjunction with the APA, imposes a non-discretionary duty on USCIS to adjudicate Plaintiff's adjustment of status applications within a reasonable time" AND "whether the United States Attorney's position would sanction USCIS's potentially indefinite delay in adjudicating Plaintiffs' status adjustment applications."**

Regulation 245.2(a)(5)(i) makes a simple promise: "the applicant ***shall be notified*** of the decision of the director and, if the application is denied, the reasons for the denial." 8 C.F.R. § 245.2(a)(5)(i) (emphasis added). The promise, then, is notice of a decision—nothing more. The regulation says nothing about the potential outcomes of that decision, nor does it impose any requirement regarding the pace at which the decision must be made; reading Regulation 245.2(a)(5)(i) as somehow giving jurisdictional authority to dictate the pace of adjudication stretches the text beyond recognition. More importantly, though, agency regulation simply cannot transform into a mandatory duty that which Congress has made discretionary. As explained above, Congress has been explicit that the ultimate decision on an I-485—and any attendant "decisions or actions" within that process—falls within the Attorney General's unreviewable discretion. Regulation 245.2(a)(5)(i), therefore, operates only within that broader statutory framework: when

14

a decision is made, the applicant will receive notice of it; that is the full extent of the obligation. Critically, too, the Eighth Circuit has been explicit that a regulation cannot breathe jurisdictional life into a claim where the statute itself confers discretion:

> This case is not a review of a regulation. The discretion does not come from the regulation setting out the Adjudication Hold Policy. In fact, that regulation has no discretion. *See* 8 C.F.R. § 245.2(a)(5)(ii). This case addresses whether the Attorney General acted within his discretionary, statutory authority by implementing and executing the Adjudication Hold Policy. This court agrees with the Thigullas' claim that this case is a pure question of statutory interpretation. Applying § 1252(a)(2)(B)(ii), this court held: "**if the statute specifies that the decision [or action] is wholly discretionary, regulations or agency practice will not make the decision [or action] reviewable**."

Thigulla, 94 F.4th at 776 (quoting Rajasekaran, 815 F.3d at 1099) (emphasis added)).

So, does the United States Attorney "sanction USCIS's potentially indefinite delay in adjudicating Plaintiffs' status adjustment applications?" ECF 18, p. 23. Candidly, that concern is hypothetical; as the Court has noted, this case involves a pending RFE, and Plaintiffs' applications will be adjudicated in due course thereafter. Federal courts do not resolve hypotheticals. See TransUnion LLC. v. Ramirez, 594 U.S. 413, 423 (2021) ("Under Article III, federal courts do not adjudicate hypothetical or abstract disputes. Federal courts do not possess a roving commission to publicly opine on every legal question."). That said, in the undersigned AUSA's experience, immigration applications do not simply languish in the corner. If anything, the opposite problem has arisen: the mere threat of litigation has incentivized agencies to moot cases quickly to conserve resources, creating perverse litigation strategies under the unwieldy and highly subjective *TRAC* analysis that at least one judge has rightly called out as the "Sword of Damocles" approach. Meixian Ye, 2017 WL 2804932 at *2. Nothing about this case suggests a uniquely extraordinary circumstance warranting *mandamus* relief, nor any indication that Plaintiffs have been singled out for mistreatment or that USCIS has abdicated its duty to adjudicate their applications. Whatever fear this Court may have about a future possibility, that concern does not present itself today.

15

**WHEREFORE**, Defendants respectfully request this Court *dismiss* this action against them.

Respectfully Submitted,

THOMAS C. ALBUS
Acting United States Attorney

/s/ *Shane K. Blank*
SHANE K. BLANK, #65787MO
Assistant United States Attorney
111 South Tenth Street, Room 20.333
Saint Louis, MO 63102
(314) 539-2200
shane.blank@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on Friday, May 1, 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record for Plaintiffs.

/s/ *Shane K. Blank*
SHANE K. BLANK
Assistant United States Attorney

16